STATE *vs.* JOHN RUZZO.

JULY 7, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J.   The indictment in this case charges that, on June 28, 1937, the defendant operated an automobile upon a public highway of this state so as to endanger life, resulting in the death of one Domenico Di Carlo.   The jury returned a verdict of guilty with a recommendation of mercy. The defendant's motion for a new trial was denied by the trial justice.   Thereafter, the defendant duly prosecuted a bill of exceptions, which sets forth eleven exceptions, namely, an exception to the decision of the trial justice denying his motion for a new trial; eight exceptions to rulings on the admission or exclusion of testimony during the trial; one exception to an instruction by the court, and one exception to the denial of his request for instructions.   At the hearing before us, the defendant relied solely on the exception last mentioned, expressly waiving all other exceptions.   The only question in this case, therefore, is whether the trial justice committed prejudicial error in refusing to instruct the jury as requested by the defendant.

In the circumstances, it is unnecessary for us to refer to the evidence except to state, in a general way, the circumstances leading to Di Carlo's death.   On the day in question, the defendant drove his automobile, with Di Carlo and three other friends as passengers, to a picnic, where they all indulged in the use of intoxicating drinks during the afternoon.   When the picnic was over, the defendant and his four friends drove to a wayside inn where they continued eating, and drinking intoxicating drinks, until they left for home shortly after midnight, with the defendant driving the automobile.

In the center of the intersection of certain highways, which the defendant had to travel, there was a large circular area surrounded by a concrete curbing for the purpose of controlling traffic, commonly called a rotary. The rotary was well lighted, and the approach to it was marked with warning signs of various kinds. The night was clear, with little, if any, traffic in that vicinity. The defendant, under these conditions, drove his automobile squarely into the rotary, completely demolishing the automobile and severely injuring Di Carlo, who subsequently died, as a result of the injuries that he received. The verdict of guilty, which was approved by the trial justice in denying defendant's motion for a new trial, is supported by the overwhelming weight of the evidence. The defendant waived his exception to this ruling.

With the defendant's guilt thus plainly established in fact, we will now consider the only exception upon which he relies. While the jury was considering the case, they came into court and, through their foreman, asked the trial justice if it was "permissible for the Jury, in case the defendant is found guilty, to recommend leniency?" In answer to this question the trial justice told them that they could make such a recommendation, if they desired. The defendant excepted to this instruction, which exception he has since waived, and then requested the trial justice to further instruct the jury that "the Judge presiding at the trial can ignore recommendations of leniency if he sees fit. He can accept their recommendation or he can ignore it." The trial justice refused to instruct the jury as requested and noted the defendant's exception, which is the single exception now before us.

There is no statute in this state which authorizes the jury to recommend a defendant to mercy. In the absence of statute, the overwhelming weight of authority holds that it is not a matter of right for the jury to accompany their ver-

.dict with a recommendation of mercy. If such a recommendation is made by them on their own motion, it is treated as mere surplusage and of no legal effect. *State* v. *Doucet*, 177 La. 63; *State* v. *Bradley*, 6 La. Ann. 554. Although the recommendation does not invalidate the verdict, it is looked upon with disfavor in a number of jurisdictions. *People* v. *Lee*, 17 Cal. 76; *People* v. *Caiazza*, 61 Cal. App. 505; *People* v. *Keylon*, 122 Cal. App. 408; *State* v. *Hancock*, 151 N. C. 699; *State* v. *Matthews*, 191 N. C. 378; *State* v. *Bennett*, 40 S. C. 308; *Estes* v. *State*, 35 Okla. Crim. Rep. 335; *State* v. *Arata*, 56 Wash 185; *Commonwealth* v. *Zec*, 262 Pa. 251. It has been held that the court may refuse to receive a verdict with a recommendation to mercy—*State* v. *Potter*, 15 Kan. 314; *State* v. *McKay*, 150 N. C. 813—or it may direct the verdict to be entered without the recommendation. *People* v. *Lee, supra.*

Difficulty arises when the jury, while considering the evidence and before reaching a verdict, ask the court whether they may recommend a defendant to mercy. In this state a jury discharge their full duty by fairly determining the guilt or the innocence of a defendant according to the evidence. The punishment that may follow a verdict of guilty is no concern of theirs. The grave responsibility of determining the nature and extent of the sentence rests solely with the court. Therefore, the jury are not entitled as of right to be advised in the matter of a recommendation to mercy.

Whether a trial justice will answer a jury's inquiry respecting a recommendation to mercy rests entirely with him. He may properly decline to answer the question, since the jury should confine themselves strictly to a consideration of the evidence. They should not divert their attention from the only point for them to determine, which is the guilt or the innocence of the defendant, by injecting into their deliberations a consideration of what sentence the court may

impose following a verdict of guilty. *State* v. *Bell*, 206 Ia. 816; *State* v. *Lunsford*, 163 Wash. 199; *State* v. *Vasquez*, 16 Nev. 42; *Russell* v. *State*, 57 Ga. 420; *State* v. *Overton*, 85 N. J. L. 287.

In the event that the trial justice chooses to answer the jury's question, he should first closely examine the form of question before answering, lest the question and answer, when considered together, lead the jury to believe that, because of their recommendation to mercy, the punishment of the defendant will be reduced. *McBean* v. *State*, 83 Wis. 206. If the question is unobjectionable in form, then the answer of the trial justice should be expressed in language which will not permit the jury to believe that their recommendation to mercy will have any binding effect on the judgment of the court in the matter of sentence. *State* v. *Kiefer*, 16 S. D. 180; *State* v. *Kernan*, 154 Ia. 672; *State* v. *Doucet, supra; Territory* v. *Griego*, 8 N. M. 133. Such a result, whether due to the form of the question or to the answer of the trial justice, constitutes an unauthorized interference by the court with the deliberations of the jury.

The instant case is of first impression in this state. Furthermore, no authority has been cited to us, nor have we found any, which deals with the precise question under consideration. The defendant strongly relies upon the case of *State* v. *Block*, 119 N. J. L. 277, while the state relies with equal confidence on the case of *State* v. *Gill*, 14 S. C. 410. Neither of these cases is exactly in point.

In the *Block* case the trial justice told the jury that they could recommend the defendant to mercy if they desired, but that their recommendation would not bind the court in the matter of sentence. The jury then returned a verdict of guilty without recommendation. On appeal, the defendant contended that the sentence which the court imposed was excessive, as the jury would have recommended the defendant to mercy but for the court's statement re-

specting the effect of a recommendation to mercy, which deprived him of the benefit of such recommendation. The supreme court overruled this contention, holding that the recommendation to mercy was in fact withdrawn by the jury, but that, assuming such a recommendation, the matter of sentence still remained in the sole discretion of the trial justice within the limits prescribed by law. It is to be noted that in this case the court expresses no opinion as to whether it would have been prejudicial error if the trial justice, upon request by the defendant as in the instant case, had failed to inform the jury that a recommendation to mercy by them would not bind the court in the matter of sentence.

The *Gill case, supra,* upon which the state relies, holds that the trial justice committed no error when he merely told the jury that they could recommend the defendant to mercy, without further informing them that such recommendation was not binding on him under the law. This case also differs from the instant case in that the trial justice was not specifically requested to instruct the jury as to the effect of a recommendation to mercy. In the later case of *State* v. *Jones,* 74 S. C. 456, where the situation was similar to that in *State* v. *Block, supra,* the South Carolina court reached the same conclusion as the New Jersey court did in the *Block* case.

Our examination of the authorities convinces us that no right of a defendant in a criminal case is violated if a trial justice refuses to answer the jury's inquiry regarding a recommendation to mercy, but that serious questions may arise if he elects to answer such inquiry. The motive that prompts a jury to ask whether they may recommend a defendant to mercy is rarely known and ordinarily rests in conjecture. Except for some unusual case where the surrounding circumstances clearly admit of sympathetic considerations from a humane viewpoint, an answer by the trial

justice without explanation as to the legal effect of a recommendation to mercy, even though otherwise proper, may leave a doubt as to whether such answer exerted any influence on the jury or any member thereof in finding a verdict of guilty. After careful consideration, we are of the opinion that if, in response to a request from the jury, a trial justice sees fit to tell them that they may recommend a defendant to mercy, he should inform them in plain language that such recommendation is without binding effect on the court in the matter of sentence. In view of this conclusion, we find that in the instant case the trial justice was in error in refusing to instruct the jury as requested by the defendant.

But was the error prejudicial in the circumstances of this case? Other than arguing the technical ground of error that we have just decided, the defendant points to nothing in the record before us tending to show that he was prejudiced by the answer under consideration. He rests his claim for a new trial solely on the speculation that such answer might have influenced the jury in finding him guilty.

The defendant cannot justify his claim of prejudicial error on the mere hope that but for the truncated answer of the trial justice he might have been acquitted, in disregard of the evidence. It is clear to us that this was not the jury's intention, for their question, as framed, plainly implies that they did not intend to consider a recommendation to mercy until *after* they had determined the guilt of the defendant from the evidence and without regard to the possibility of such a recommendation. The fact that the death of the defendant's friend, with whom he had been eating and drinking all day, resulted from the negligent act of the defendant may well have moved the jury, after they had agreed on a verdict of guilty, to inquire whether they could *add* to that verdict a recommendation to mercy. We find no prejudicial error in the special circumstances of this case.

The defendant's exception is overruled, and the case is remitted to the superior court for further proceedings.

*Fred A. Otis*, Assistant Attorney General, for State.

*Arthur Falcone*, for defendant.